# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>**TRIPLE CROWN MEDIA, INC., et al.**[1]<br>Debtors. | Chapter 11<br>Case No. 09-_____<br>Jointly Administered |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 105(A) AND 366 (I) PROHIBITING UTILITY COMPANIES FROM DISCONTINUING, ALTERING, OR REFUSING SERVICE, (II) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCES OF PAYMENT, AND (III) ESTABLISHING PROCEDURES FOR THE UTILITY COMPANIES TO OPT OUT OF THE DEBTORS' PROPOSED PROCEDURES FOR ADEQUATE ASSURANCE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") file this motion (the "Motion") for entry of interim (the "Interim Order") and final (the "Final Order") orders: (i) prohibiting utility companies from altering, refusing, or discontinuing service, (ii) establishing procedures for determining adequate assurance of payment, and (iii) establishing procedures for utility companies to opt out of the Debtors' proposed procedures for adequate assurance. In support of this Motion, the Debtors rely on the Declaration of Mark G. Meikle in Support of First Day Motions and Applications (the "Meikle Declaration"), and respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors are the following entities (followed by the last four digits of their tax identification numbers): Triple Crown Media, Inc. (2824), Triple Crown Media, LLC (2824), BR Acquisition Corp. (8679), BR Holding, Inc. (7599), Datasouth Computer Corporation (9261), Gray Publishing, LLC (7061), and Capital Sports Properties, Inc. (6084). The service address for all of the Debtors for purposes of these chapter 11 cases is: 725 Old Norcross Road, Lawrenceville, GA 30045.

1673012_4

2. The statutory predicates for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), as amended.

## BACKGROUND

3. The Debtors commenced these cases by the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code on September 14, 2009 (the "Commencement Date"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their affairs as debtors in possession. As of the date hereof, no creditors committee, trustee or examiner has been appointed in any of these chapter 11 cases.

4. The Debtors operate a newspaper publishing business in certain communities in the Atlanta, Georgia metropolitan area and western Georgia. The Debtors own and operate six daily newspapers and one weekly newspaper. These community newspapers focus on local content, including coverage of local youth, high school and college sports, local business, politics, entertainment and cultural news. As community newspapers with locally driven content, the Debtors are able to differentiate themselves from other forms of media by providing a cost-effective medium for local advertisers to target their customers.

5. The Debtors have entered into a Restructuring Support Agreement ("RSA") with holders of more than 80% of the Debtors' obligations under their second lien credit facility (the "Second Lien Credit Facility"). The RSA contemplates a comprehensive financial restructuring of the Debtors pursuant to the terms set forth in the Joint Plan of Reorganization (the "Plan") filed concurrently herewith. The Plan contemplates, among other things, the conversion of a portion of the Second Lien Credit Facility to equity in the Reorganized Debtors. Additionally, the Debtors reached an agreement with Wachovia Bank, National Association ("Wachovia" or the "First Lien Administrative Agent"), the collateral and administrative agent under the Debtors' first lien credit facility (the "First Lien Credit Facility") and Wilmington Trust ("Wilmington" or the "Second Lien

2

Administrative Agent" as the collateral and administrative agent under the Second Lien Credit Facility for the consensual use of Cash Collateral, subject to certain terms and conditions, during the pendency of these chapter 11 cases.

6. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these chapter 11 filings are contained in the Declaration of Mark G. Meikle in Support of First Day Motions and Applications (the "Meikle Declaration"), filed contemporaneously herewith.

## RELIEF REQUESTED

7. Section 366(a) of the Bankruptcy Code prevents utility companies from discontinuing, altering or refusing service to a debtor during the first twenty days of a bankruptcy case. However, thirty days from the Commencement Date, a utility company may discontinue its services, pursuant to section 366(c)(2) of the Bankruptcy Code, if a debtor has not furnished adequate assurance of payment.

8. By this Motion, the Debtors seek entry of an interim and final order: (a) determining that their Utility Providers (as defined below) have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (b) approving the Debtors' proposed procedures for Utility Providers to request additional or different adequate assurance; (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance; (d) establishing procedures for the Utility Providers to seek to opt out of the Debtors' proposed adequate assurance procedures; and (e) determining that the Debtors are not required to provide any additional adequate assurance, beyond what is proposed by this Motion.

## THE UTILITY PROVIDERS

9. In the operation of their business, the Debtors incur expenses for various utilities, including for water, sewer service, electricity, natural gas, and telecommunications in the ordinary course of business. These utility services are provided by approximately sixteen (16) providers (collectively, the "Utility Providers") through approximately forty-nine (49) accounts, including those listed on the attached Exhibit A[2]. On average, the Debtors spend approximately $45,000 each month on utility costs. As of September 11, 2009, approximately $39,000 in utility costs were outstanding. In light of the minimal amount of outstanding utility costs, the Debtors believe that the proposed Adequate Assurance Deposit (as defined below) is more than sufficient to provide the Utility Providers with adequate assurance of payment.

10. If utility services to the Debtors' printing, distribution, and administrative facilities were interrupted, the Debtors would no longer be able to operate their business, and could suffer irreparable harm. Continuity of utility services is particularly critical in these cases because the Debtors rely on various utilities for printing the newspapers and without printing capabilities, the Debtors would be unable to continue business operations. Any loss of utility services could result in the delay in distribution of newspapers to the customers, causing irreparable harm to the Debtors' relationship with customers, loss of related advertising revenues, and the loss of goodwill in the marketplace.

11. Simply put, without utility service, the Debtors' operations will shut down. The delays associated with a disruption to utility services will inevitably harm customer relations by disrupting customers' ability to rely on the Debtors. Indeed, any interruption of utility services would negatively impact the Debtors' business operations, customer relationships, revenue, and

---

[2] Although the Debtors believe that Exhibit A encompasses all entities that could qualify as a Utility Provider, the Debtors reserve the right, without further order of the Court, to supplement the list if any Utility Provider has been omitted. Additionally, the listing of an entity on Exhibit A is not an admission that any particular entity is a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future.

4

profits, seriously jeopardizing the Debtors' reorganization efforts. It is, therefore, critical that utility services continue uninterrupted.

## PROPOSED ADEQUATE ASSURANCE

12. The Debtors fully intend to pay all post-petition obligations owed to the Utility Providers in a timely manner. Further, the Debtors expect that cash available pursuant to their Cash Collateral Motion will be more than sufficient to pay all post-petition utility obligations.

13. Nevertheless, the Debtors propose to provide adequate assurance to the Utility Providers by making a deposit equal to fifty percent (50%) of one month of utility service, calculated as a historical average during the most recent calendar year, to all Utility Providers as interim adequate assurance (the "Adequate Assurance Deposit") within five (5) business days of the entry of an Interim Order granting the relief requested herein, provided that such Utility Provider is not currently paid in advance for its services. As a condition of accepting an Adequate Assurance Deposit, the requesting Utility Provider shall be deemed to have stipulated that the Adequate Assurance Deposit constitutes adequate assurance of future payment to such Utility Provider within the meaning of section 366 of the Bankruptcy Code, and shall further be deemed to have waived any right to seek additional adequate assurance during these reorganization cases, unless the Utility Provider makes an additional adequate assurance request at least five (5) business days prior to the final hearing date on this Motion as set by the Court (the "Final Hearing Date"). Finally, the Utility Provider will be required to return the Adequate Assurance Deposit within fifteen (15) days of the effective date of any confirmed plan of reorganization or the closing of a sale of substantially all of the Debtors assets pursuant to section 363 of the Bankruptcy Code.

14. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future utility services in the ordinary course of business (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers.

5

If any Utility Provider believes additional assurance is required, they may request such assurance pursuant to the procedures described below.

## PROPOSED ADEQUATE ASSURANCE PROCEDURES

15. Section 366(a) of the Bankruptcy Code recognizes the necessity of continuous utility services and prohibits Utility Providers from altering, refusing or discontinuing utility services to, or discriminating against, a debtor due to either its bankruptcy filing or any outstanding prepetition obligations for a period of 30 days after the filing. At the conclusion of those 30 days, however, a utility company may discontinue services if a debtor has not furnished adequate assurance of payment. 11 U.S.C. § 366(c)(2). In this case, and absent the procedures proposed in this Motion, Utility Providers may discontinue service, without warning, on the date that is 30 days following the Commencement Date, if they claim they have not yet received a "satisfactory" adequate assurance payment (at least from their subjective point of view). Although the Debtors could contest this action - or pay a Utility Provider's late demand - by the time that they do so, irreparable damage will have already been done to the Debtors' operations and customer relations.

16. In light of the severe consequences to the Debtors of any interruption in utility services, but recognizing the right of Utility Providers to evaluate the Proposed Adequate Assurance on a case-by-case basis, the Debtors are proposing procedures that will enable them to cooperatively work with the Utility Providers in a coordinated manner to consensually resolve adequate assurance issues. If the Debtors and a Utility Provider cannot consensually resolve such issues, the Court should determine first whether any additional adequate assurance payment is necessary (in view of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "2005 Act") and, if so, the amount of any such adequate assurance payment so that the Utility Providers will not be able to cease performance for failure of adequate assurance. The procedures the Debtors propose are as follows (the "Adequate Assurance Procedures"):

a) The Debtors will fax, email, serve by overnight mail or otherwise expeditiously send a copy of this Motion, together with the proposed utility order, which includes the proposed procedures, to each Utility Provider within two business days after the Court schedules a Final Hearing Date on the Motion.

b) The Debtors will pay each Utility Provider an Adequate Assurance Deposit within five (5) business days of the entry of the Interim Order.

c) A Utility Provider desiring additional assurances of payment in the form of deposits, security, or otherwise must serve a request (an "Additional Assurance Request") upon the Debtors at the following addresses: (i) Triple Crown Media, Inc., 725 Old Norcross Road, Lawrenceville, GA 30045, (Attn: Mark G. Meikle); (ii) Dinsmore & Shohl LLP, 255 E. 5th St., Suite 1900, Cincinnati, Ohio 45202 (Attn: Tim J. Robinson); and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 18th Floor, Wilmington, DE 19899 (Attn: Robert Dehney and Gregory Donilon); counsel to the Debtors; (iii) U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (iv) K&L Gates, Hearst Tower, 214 North Tryon, Charlotte, NC 28002 (Attn: Evan Wolkofsky and Jo Ann Brighton), counsel for the First Lien Administrative Agent; (v) Ropes & Gray, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Mark Somerstein and Shuba Satyprasad); Counsel for the Second Lien Administrative Agent; and (vi) counsel for any statutory committee appointed in these cases. The Additional Assurance Request must be sent to all of the above notice parties to be deemed valid.

d) The Additional Assurance Request must be made no later than five (5) business days prior to the Final Hearing Date. If a Utility Company fails to timely file its request, it shall be: (i) forbidden to discontinue, alter or refuse service on account of any unpaid prepetition charges, or require additional adequate assurance of payment other than the Proposed Adequate Assurance described in this Motion; and (ii) deemed to have received adequate assurance of payment in compliance with section 366 of the Bankruptcy Code.

e) Any Additional Assurance Request must: (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits; and (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

f) Upon the Debtors' receipt of any Additional Assurance Request at the addresses set forth above, the Debtor's shall have the greater of (a) fourteen (14) days from the receipt of any such Additional Assurance Request or (b) thirty days from the Commencement Date (collectively, the "Resolution Period") to negotiate with the Utility Provider to resolve that Utility Provider's request for additional assurance of payment. During this period, Utility Providers may not terminate any of the services they provide to the Debtors on account of the bankruptcy filing or any unpaid charges for prepetition services.

g) The Debtors may resolve any Additional Assurance Request by mutual agreement with the Utility Provider, with the consent of the Second Lien Administrative Agent, which consent shall not be unreasonably withheld, and without further order of the Court. The Debtors may in connection with any such agreement, as necessary, provide a Utility Provider with additional adequate assurance of future payment including, but not limited to, cash deposits, prepayments and/or other forms of security, without further order of this Court, if the Debtors believe such additional assurance is reasonable.

h) If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider, during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

i) Pending resolution of any such Determination Hearing, such particular Utility Provider shall be restrained from discontinuing, altering, or refusing service to the Debtors on account of unpaid charges for prepetition services or the Debtors' bankruptcy filing.

17. In most cases, the Debtors believe that the Utility Providers will conclude that an Additional Assurance Payment is unnecessary. The Debtors have a good relationship with all of the Utility Providers, having a long history of timely payments to these entities.

18. The Debtors do not anticipate any problems in honoring their utility obligations. Subject to entry of Interim and Final Orders with respect to the Debtors' motion regarding the use of cash collateral, the Debtors have sufficient cash to timely satisfy all of their post-petition utility services obligations. Accordingly, the Debtors believe that Additional Assurance Payments will ultimately prove unnecessary and, if forced to bring this matter before the Court, would argue the same.

## PROCESS FOR OPTING OUT OF ADEQUATE ASSURANCE PROCEDURES

19. Historically, chapter 11 debtors were able to put the onus on Utility Providers, under section 366 of the Bankruptcy Code, to argue that whatever form of adequate assurance proposed by the debtor was insufficient. The recent modifications to section 366 of the Bankruptcy Code arguably shift the burden onto debtors to provide adequate assurance the utility provider finds

satisfactory, and to seek court review if the utility provider does not accept the proposed adequate assurance. Under this reading of revised section 366, a Utility Provider could, on the thirtieth day following the Commencement Date, announce that the proposed adequate assurance is not acceptable, demand an unprecedented deposit or prepayment in any amount it deems fit and threaten to terminate utility service the next day unless the Debtors complied with the demand. While the Debtors do not concede that the foregoing scenario reflects a correct interpretation of revised section 366, the Debtors nonetheless believe it is prudent to require Utility Providers to raise any objections to the Adequate Assurance Procedures so that such objections may be heard by the Court before the running of the 30-day period following the Commencement Date.

20. To avoid a potential hostage situation, the Debtors propose the following procedures:

a) Any Utility Provider who objects to the Adequate Assurance Procedures outlined above must file an objection to such procedures (a "Procedure Objection") so that it is actually received at least five business days prior to the Final Hearing Date by the Debtors at the following addresses: (i) Triple Crown Media, Inc., 725 Old Norcross Road, Lawrenceville, GA 30045, (Attn: Mark G. Meikle); (ii) Dinsmore & Shohl LLP, 255 E. 5th St., Suite 1900, Cincinnati, Ohio 45202 (Attn: Tim J. Robinson); and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 18th Floor, Wilmington, DE 19899 (Attn: Robert Dehney and Gregory Donilon); counsel to the Debtors; (iii) U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (iv) K&L Gates, Hearst Tower, 214 North Tryon, Charlotte, NC 28002 (Attn: Evan Wolkofsky and Jo Ann Brighton), counsel for the First Lien Administrative Agent; (v) Ropes & Gray, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Mark Somerstein and Shuba Satyprasad); Counsel for the Second Lien Administrative Agent; and (vi) counsel for any statutory committee appointed in these cases.

b) Any Procedure Objection must: (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits; (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and (v) set forth why the Utility Provider believes it should be exempted from the Adequate Assurance Procedures.

c) The Debtors may resolve any Procedure Objection by mutual agreement with the Utility Provider, with the consent of the Second Lien Administrative Agent, which consent shall not be unreasonably withheld, and without further order of the Court. In connection with any such agreement, the Debtors may provide a Utility Provider with additional adequate assurance of future payment including, but not limited to,

cash deposits, prepayments and/or other forms of security, without further order of this Court if the Debtor's believe such additional assurance is reasonable.

d) If the Debtors determine that the Procedure Objection is not reasonable and are not able to reach a prompt alternative resolution with the Utility Provider, the Procedure Objection will be heard at the next scheduled hearing.

e) All Utility Providers that do not timely file a Procedure Objection are deemed to consent to the Adequate Assurance Procedures and shall be bound by the Adequate Assurance Procedures. The sole recourse of all Utility Providers that do not timely file a Procedure Objection shall be to submit an Additional Assurance Request pursuant to the Adequate Assurance Procedures, and such Utility Providers shall be enjoined from ceasing performance pending any Determination Hearing that may be conducted pursuant to the Adequate Assurance Procedures.

## SUBSEQUENT MODIFICATIONS OF UTILITY SERVICE LIST

21. The Debtors have made an extensive and good faith effort to identify their Utility Providers and include them on the Utility Service List. Nonetheless, it is possible that the Debtors have not yet identified or included certain Utility Providers on the Utility Service List. To the extent that the Debtors identify additional Utility Providers, the Debtors will file amendments to the Utility Service List, and shall serve copies of the Order on such newly identified Utility Providers. The Debtors request that the order be binding on all Utility Providers, regardless of when such Utility Provider was added to the Utility Service List.

## BASIS FOR RELIEF

22. Congress enacted section 366 of the Bankruptcy Code to protect debtors from utility service cutoffs upon a bankruptcy filing while, at the same time, providing utility companies with adequate assurance that the debtors will pay for post-petition services. See H.R. REP. No. 95-595, at 350 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 protects debtors by enjoining utilities from altering, refusing or discontinuing services solely on account of unpaid prepetition amounts for a period of 30 days after the bankruptcy filing. And it protects

utilities by permitting them to alter, refuse, or discontinue service after 30 days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility.[3]

23. Section 366(c), which was enacted as part of the 2005 Act, significantly modified the existing statutory framework. It has two primary purposes: first, it permits a utility to alter, refuse or discontinue utility service if a debtor has not provided "satisfactory" adequate assurance within 30 days of its bankruptcy filing, subject to the court's ability to modify the amount of adequate assurance. It also restricts the factors that a court can consider when determining whether an adequate assurance payment is, in fact, adequate. Specifically, courts may no longer consider: (i) the absence of a security deposit before the debtor's Commencement Date, (ii) the debtor's history of timely payments, or (iii) the availability of an administrative expense priority when determining the amount of a deposit. Notwithstanding these noteworthy changes, it does not appear that Congress intended to - or did - abrogate the bankruptcy court's right to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

24. First, while section 366(c) does limit the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide such adequate assurance. Instead, section 366(c) gives courts the same discretion in determining the amount of payment necessary for adequate assurance as they previously had under section 366(b). Compare 11 U.S.C. § 366(b) (2005) ("On request of a party-in-interest and after notice and a hearing, the court

---

[3] Utility companies have long argued that their right to adequate assurance entitles them to a deposit or other security interest. Before Congress enacted the 2005 Act, courts, commentators, and legislative history had all confirmed that section 366 did not require, in every case, that the debtor provide a deposit or other security to its utilities as adequate assurance of payment. In re Caldor, 117 F.3d 646, 647 (2d Cir. 1997) ("a bankruptcy court's right to 'modify' the level of the 'deposit or other security' provided for under section 366(b) includes the power to require no 'deposit or other security' where none is necessary to provide a utility with 'adequate assurance' of payment"); In re Shirey, 25 B.R 247, 249 (Bankr. E.D. Pa. 1982) ("section 366(b) . . does not permit a utility to request adequate assurance of payment for continued services unless there has been a default by the debtor on a prepetition debt owed for services rendered"). The recently enacted section 366(c) does not change this conclusion.

11

may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment") with 11 U.S.C. § 366(c)(3)(A) (2005) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2)"); see also Richard Levin & Alesia Ranney-Marinelli, The Creeping Repeal of Chapter 11: The Significant Business Provisions of the Bankruptcy Abuse Protection and Consumer Protection Act of 2005, 79 Am. Bankr. L.J. 603, 608-09 (2005) (stating that Courts would likely continue to determine the amount and form of adequate protection after the implementation of the 2005 Act). It is well established that section 366(b) permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. See In re Caldor, 117 F. 3d at 650 ("Even assuming that 'other security' should be interpreted narrowly, . . . a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b) includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment'"). This may be particularly true in cases where the debtor has made prepetition deposits or prepayments for services that utilities will ultimately render post-petition. 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for post-petition services as adequate assurance). Accordingly, courts continue to have discretion to determine the amount of adequate assurance payments and, where appropriate, to determine that no such payment is necessary.

25. Additionally, section 366(c), like section 366(b), simply requires that a utility's assurance of payment be "adequate." Courts have long recognized that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. In re Caldor, 199 B.R. 1, 3 (Section 366(b) "does not require an 'absolute guarantee of payment'"); In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) (accord); In re Steinebach, 303 B.R. 634, 641 (Banks. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute

assurance . . . all § 366(b) requires is that a utility receive only such assurance of payment as is necessary to protect its interests given the facts of the debtor's financial circumstances"). Courts have also recognized that in determining the amount of adequate assurance, bankruptcy courts should focus "on the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." In re Caldor, 117 F.2d at 6650 (emphasis in original); See also In re Penn. Cent. Transp. Co., 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits would likely "jeopardize the continuing operating of the [debtor] merely to give further security to suppliers who are already reasonably protected"). Accordingly, demands by a utility company for a guarantee of payment when it already has adequate assurance of payment in light of the Debtors' specific circumstances should be refused.

26. Based upon the foregoing, the Debtors believe that most, if not all, of their Utility Providers have adequate assurance of payment without any additional adequate assurance provisions. As previously discussed, the Debtors are seeking approval of the use of cash collateral that will enable them to pay their operating costs, including utility costs, as they come due. The Debtors have a powerful incentive to stay current on their utility obligations because of their significant reliance on utility services for their printing operations. Without utility services, particularly electrical power, the Debtors will be unable to operate at all. These factors, which the Court may (and should) consider when considering the amount of any adequate assurance payments, justify a finding that no adequate assurance payment is required at all. In light of the foregoing, the Debtors submit that the Proposed Adequate Assurance Deposits are more than sufficient to assure the Utility Providers of future payment.

27. If the Utility Providers disagree with the Debtors' analysis, however, the procedures proposed in this motion will enable the parties to negotiate and, if necessary, seek Court intervention

without jeopardizing the Debtors' continuing operations. The Court has authority to approve the proposed procedures under section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01, at 105-5 to 105-6 (15th ed. rev. 2001).

28. The proposed procedures are necessary for the Debtors to carry out their reorganization efforts. If the Court does not approve the proposed procedures, the Debtors could be forced to address numerous adequate assurance requests by their Utility Providers in a disorganized manner at a critical point in their reorganization. Moreover, the Debtors could be blindsided by a Utility Provider unilaterally deciding -- on the thirty-first day following the Commencement Date-- that it is not adequately protected and discontinuing service or making an exorbitant demand for payment to continue service. As set forth above, discontinuation of service, particularly electricity, could essentially halt the Debtors' operations, putting the Debtors' reorganization efforts in extreme jeopardy. The proposed procedures set forth a fair process that will enable all parties to negotiate their respective positions and, where necessary, seek Court intervention without jeopardizing the Debtors' reorganization efforts. In fact, Delaware courts have approved similar procedures in other chapter 11 cases filed after the 2005 Act became effective. *In re National Dry Cleaners, Inc.,* Case No. 08-11382 (Bankr. D. Del. July 7, 2008) (CSS) (deeming utilities adequately assured where the debtors established segregated account containing an amount equal to fifty percent (50%) of the debtors' estimated monthly cost of utility service); *In re Buffets Holdings, Inc.,* Case No. 08-10141 (Bankr. D. Del. Feb 27, 2008) (PJW) (same); *In re American Home Mortgage Holdings, Inc.,* No. 07-11047 (Bankr. D. Del. Sept. 4, 2007) (CSS) (same); *In re Global Home Products LLC,* No. 06-

14

10340 (Bankr. D. Del. May 4, 2006) (KG) (same); *In re New Century TRS Holdings, Inc.,* No. 07-10416 (Bankr. D. Del. Apr. 24, 2007) (KJC) (deeming utilities adequately assured where debtor provided two-weeks deposit for utilities); *In re Pliant,* No. 06-10001 (Bankr. D. Del. Jan. 5, 2006) (PJW); *In re Nobex Corp.,* No. 05-20050 (Bankr. D. Del. Dec. 21, 2005) (PJW); *In re FLYi, Inc.,* No. 05-20011 (Bankr. D. Del. Dec. 2, 2005) (PJW).

29. Accordingly, based on the foregoing facts and authorities, the Debtors believe that granting the relief requested herein will not prejudice the rights of the Utility Providers under § 366 of the Bankruptcy Code.

## NOTICE

30. No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion was served upon the following parties: (i) Counsel to the Debtors, (ii) Counsel to the First Lien Administrative Agent, (iii) Counsel to the Second Lien Administrative Agent, (iv) the U.S. Trustee for the District of Delaware, and (v) the debtors consolidated list of top 30 unsecured creditors; and (vi) the Utility Providers. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

31. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto as Exhibit B and Exhibit C: (i) determining that their Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, (ii) approving the Debtors' Proposed Adequate Assurance Deposit and the Adequate Assurance Procedures, (iii) prohibiting the Utility Providers from discontinuing, altering, or refusing service, (iv) establishing procedures for the Utility Providers to

opt out of the proposed Adequate Assurance Procedures, (v) determining that the Debtors are not required to provide any additional adequate assurance, beyond what is proposed by this motion, and (vi) granting such other and further relief as the Court deems appropriate.

Dated: September 14, 2009
Wilmington, Delaware

/s/ Gregory T. Donilon
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Robert J. Dehney (DE Bar No. 3578)
Gregory T. Donilon (DE Bar No. 4244)
1201 N. Market Street
PO Box 1347
Wilmington, DE 19899-1347
Telephone: 302-658-9200
Facsimile: 302-658-3989

-and-

DINSMORE & SHOHL LLP
Tim J. Robinson, Esq. (OH Bar #0046668)
Patrick D. Burns, Esq. (OH Bar #0081111)
255 E. 5th St., Ste. 1900
Cincinnati, OH 45202
Telephone: 513-977-8200
Facsimile: 513-977-8141

Proposed Counsel to Debtors
and Debtors In Possession