IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re: | Chapter 11 |
|---|---|
| TRIPLE CROWN MEDIA, INC., et al.[1] | Case No. 09-_____ |
| Debtors. | Jointly Administered |

## APPLICATION PURSUANT TO FED. R. BANKR. P. 2014(A) FOR AN INTERIM AND FINAL ORDER UNDER SECTION 327(A) AND 328(A) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF CAYMUS PARTNERS LLC AS INVESTMENT BANKERS AND SPECIAL FINANCIAL ADVISORS TO THE DEBTORS AND DEBTORS IN POSSESSION

The above-captioned debtors and debtors-in-possession (collectively the "Debtors" or the "Company") hereby submit this application (the "Application") for entry of an order, in substantially the form attached hereto, authorizing the retention of Caymus Partners LLC ("Caymus") as Investment Bankers and Special Financial Advisors in these chapter 11 proceedings. In support of this Application, the Debtors rely on the Affidavit of J. Oliver Maggard, attached hereto as <u>Exhibit B</u>, the Declaration of Mark G. Meikle in support of First Day Motions and Applications and the Debtors respectfully state as follows:

### JURISDICTION

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors are the following entities (followed by the last four digits of their tax identification numbers): Triple Crown Media, Inc. (2824), Triple Crown Media, LLC (2824), BR Acquisition Corp. (8679), BR Holding, Inc. (7599), Datasouth Computer Corporation (9261), Gray Publishing, LLC (7061), and Capital Sports Properties, Inc. (6084). The service address for all of the Debtors for purposes of these chapter 11 cases is: 725 Old Norcross Road, Lawrenceville, GA 30045.

1689618_2

2. The statutory basis for the relief requested herein are sections 105(a), 327, 328, 1107, and 1108 of title 11 to the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. The Debtors commenced these cases by the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code on September 14, 2009 (the "Commencement Date"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their affairs as debtors in possession. As of the date hereof, no creditors committee, trustee or examiner has been appointed in any of these chapter 11 cases.

4. The Debtors operate a newspaper publishing business in certain communities in the Atlanta, Georgia metropolitan area and western Georgia. The Debtors own and operate six daily newspapers and one weekly newspaper. These community newspapers focus on local content, including coverage of local youth, high school and college sports, local business, politics, entertainment and cultural news. As community newspapers with locally driven content, the Debtors are able to differentiate themselves from other forms of media by providing a cost-effective medium for local advertisers to target their customers.

5. The Debtors have entered into a Restructuring Support Agreement ("RSA") with holders of more than 80% of the Debtors' obligations under their second lien credit facility (the "Second Lien Credit Facility"). The RSA contemplates a comprehensive financial restructuring of the Debtors pursuant to the terms set forth in the Joint Plan of Reorganization (the "Plan") filed concurrently herewith. The Plan contemplates, among other things, the conversion of a portion of the Second Lien Credit Facility to equity in the Reorganized Debtors. Additionally,

the Debtors reached an agreement with Wachovia Bank, National Association ("Wachovia" or the "First Lien Administrative Agent"), the collateral and administrative agent under the Debtors' first lien credit facility (the "First Lien Credit Facility") and Wilmington Trust ("Wilmington" or the "Second Lien Administrative Agent" as the collateral and administrative agent under the Second Lien Credit Facility for the consensual use of Cash Collateral, subject to certain terms and conditions, during the pendency of these chapter 11 cases.

6. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these chapter 11 filings are contained in the Declaration of Mark G. Meikle in Support of First Day Motions and Applications (the "Meikle Declaration"), filed contemporaneously herewith.

## RELIEF REQUESTED

7. By this Application, the Debtors seek to employ and retain Caymus to perform the necessary services described hereinafter as Investment Bankers and Special Financial Advisors pursuant to section 327 and 328 of the Bankruptcy Code. Caymus has been providing services to the Debtors and is prepared to provide immediate continuing assistance to the Debtors. The Debtors have selected Caymus because of Caymus' experience in matters of this character and its exemplary qualifications to perform the services required in this case. The retention and employment of Caymus is in the best interests of creditors and the best interests of the estate.

## RETENTION OF CAYMUS

8. Caymus is well qualified to serve as Investment Bankers and Special Financial Advisors to the Debtors. Caymus is an investment banking firm focused on strategic and restructuring advisory services, mergers and acquisitions and private placements for middle market companies, with a particular expertise in the media sector. Its professionals have

executed over 250 transactions with a total value in excess of $25 billion. Caymus' qualifications are more fully set forth in the Affidavit of J. Oliver Maggard (the "Affidavit") attached hereto as Exhibit B.

9. The resources, capabilities and experience of Caymus are crucial to the Debtors' successful restructuring through these chapter 11 cases. An experienced investment banker such as Caymus fulfills a critical need that complements the services offered by the Debtors' other professionals. Broadly speaking, Caymus will concentrate its efforts in assisting the Debtors in connection with the completion of these pre-arranged bankruptcy cases.

10. Caymus has advised the Debtors pre-petition. On or about June 9, 2009, the Debtors engaged Caymus to advise and assist the Board of Directors of the Debtors (the "Board") in connection with to the short and long-term financial outlook of the Debtors and to provide recommendations to the Board regarding potential financing restructuring options. Caymus provided such services from the date of its engagement up to immediately prior to the Commencement Date.

## BASIS FOR RELIEF REQUESTED

11. Section 327 (a) of the Bankruptcy Code provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professionals persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title

11 U.S. C. § 327(a).

12. Section 328 (a) of the Bankruptcy Code provides, in relevant part, as follows:

> The trustee ... with the court's approval, may employ or authorize the employment of a professional person under section 327 ... of this title ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provide under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

Id. at 328(a).

13. Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 ... of the Code shall be made only on application of the trustee or committee.

Fed. R. Bankr. P. 2014.

14. The Debtors believe that the employment of Caymus would be in the best interests of the Debtors and their estates, and therefore desire to employ Caymus, effective *nunc pro tunc* as of the Commencement Date, with compensation as set forth in the Engagement Letter. In the event the Debtors were required to engage a financial advisor and/or investment banker other than Caymus in connection with these chapter 11 proceedings, the Debtors, their estates and creditors and all interested parties would be unduly prejudiced by the time and expense necessarily attendant to such advisor's familiarization with the intricacies of the Debtors' businesses and financial affairs.

15. The Debtors hereby request the Court to approve the compensation arrangements described in the Engagement Letter pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. The compensation arrangements contained in the Engagement Letter are highly beneficial

5

to the Debtors' estates, as they provide certainty and proper inducement for Caymus to act expeditiously and prudently with respect to the matters for which it will be retained on behalf of the Debtors in these chapter 11 proceedings.

**(A)** **Services to Be Provided**

16. Caymus has agreed to provide assistance to the Debtors post-petition in accordance with the terms and conditions which are set forth in the appended Affidavit filed in support of this Application and in the Engagement Letter which is appended hereto as <u>Exhibit C</u> and incorporated herein by reference.

17. All the services that Caymus will provide to the Debtors will be: (i) at the request of the Debtors, (ii) appropriately directed by the Debtors so as to avoid duplicative efforts among the professionals retained in the case, and (iii) performed in accordance with applicable standards of the accounting profession. It is presently anticipated that Caymus will provide or continue to provide the following services:

   (a) Advise the Company with respect to potential alternative recapitalization or restructuring transactions, which could include, without limitation, a Restructuring Transaction (as defined below), including the timing, structure and pricing of any such transactions, and assistance with analyzing, negotiating and effecting (i) a plan of reorganization or recapitalization for the Company, and/or (ii) to the extent necessary, performing valuation analyses on the Company and its assets;

   (b) Provide financial advisory services to the Company in connection with developing, and seeking approval for, the Joint Plan of Reorganization (the "Plan"), under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code");

   (c) Provide financial advisory services to the Company in connection with the structuring of any new securities to be issued under the Plan;

   (d) Assist the Company in negotiations with creditors, shareholders and other appropriate parties-in-interest;

   (e) Provide the Board and senior management with an evaluation with regard to the comparative implications of different strategic alternatives available to the Company,

including without limitation, valuation metrics related to any alternative transactions (if any) and for comparable public companies and comparable publicly reported transactions;

(f) If necessary, participate in hearings before the bankruptcy court with respect to matters upon which Caymus has provided advice, including coordinating with the Company's counsel with respect to testimony in connection therewith; and

(g) Any other tasks as mutually agreed by Caymus and the Company.

**(B)** **Professional Compensation**

18. Caymus' decision to accept this engagement to advise and assist the Debtors is contingent upon its ability to be retained in accordance with its customary terms and conditions of employment and compensation for its services and reimbursement for the out-of-pocket expenses it incurs in accordance with its customary billing practices which are outlined in the appended Affidavit filed in support of this application and incorporated in the Engagement Letter.

19. The proposed compensation, subject to the Engagement Letter and the Order approving this Application, is as follows (the "Fee Structure").

(a) <u>Monthly Advisory Fee</u>: The Debtors will pay Caymus a fixed Monthly Advisory Fee of $25,000 for the duration of this engagement (pursuant to the Engagement Letter, Caymus has been paid $50,000 for each of the first three (3) months of this engagement).

(b) <u>Restructuring Transaction Success Fee</u>: In the event of the confirmation of the plan of reorganization which constitutes a Restructuring Transaction under the Engagement Letter, the Debtors shall pay Caymus $400,000 (the "Completion Fee") on the plan Effective Date; however, the Completion Fee will be reduced by each monthly payment received starting with the third monthly advisory fee.

20. Caymus understands and accepts that the terms of its employment must be approved by the Bankruptcy Court and that the fees it will ultimately receive will be allowed by the Bankruptcy Court and will depend among other things on the quality of its work.

21. To date, Caymus has been paid its monthly advisory fee as of June 9, July 9 and August 9, 2009, totaling $150,000. In addition, Caymus now holds a retainer of $50,000 subject to further Oder of this Court.

22. Subject to the approval of this Court and the terms of the Engagement Letter, expenses shall be paid monthly upon submission of acceptable documentation and subject to subsequent Court review in the fee applications. Under the Engagement Letter, expenses were defined to include, without limitation: travel expenses including transportation meals and lodging, reasonable fees and disbursements of Caymus' counsel incurred in connection with the negotiation, implementation and enforcement of the Engagement Letter; travel and lodging expenses; outside database charges; communication charges; courier services; photocopying and document production costs; local transportation expenses when incurred by Company personnel or by Caymus personnel after ordinary business hours; meal expenses when incurred during Company visits or by Caymus personnel after ordinary business hours; and other necessary and reasonable expenses.

23. The Debtors believe that the Fee Structure is comparable to those generally charged by financial advisory and investment banking firms of similar stature to Caymus and for comparable engagements, both in and out of bankruptcy proceedings, and reflect a balance between a fixed, monthly fee, and a success fee which are tied to the consummation and closing of the transactions and services contemplated by the Debtors and Caymus in the Engagement Letter. The Debtors and Caymus engaged in extensive arms' length negotiations regarding the Engagement Letter and compensation to be paid thereunder prior to execution.

24. The hours worked, the results achieved and the ultimate benefit to the Debtors and their estates of the work performed by Caymus in connection with this engagement may vary,

and the Debtors have taken this into account in setting the above fees. In order to induce Caymus to do business with the Debtors, the fees were set with consideration of, among other things, the difficulty of the assignment and the potential for failure.

25. Caymus' restructuring capabilities, mergers and acquisitions expertise as well as its capital markets knowledge, and financing skills, some or all of which may be required by the Debtors during the term of Caymus' engagement hereunder, were important factors to the Debtors in determining the Fee Structure, and the Debtors believe that the ultimate benefit to the Debtors of Caymus' services hereunder cannot be measured merely by reference to the number of hours to be expended by Caymus' professionals in the performance of such services.

26. The Debtors also acknowledge and agree that the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Caymus and its professionals, and in light of the fact that such commitment may foreclose other opportunities for Caymus and that the actual time and commitment required of Caymus and its professionals to perform the Services may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

27. In light of the foregoing, the Debtors believe that the Fee Structure is both fair and reasonable under the circumstances of this engagement.

28. In accordance with section 504 of the Bankruptcy Code, Caymus has informed the Debtors that there is no agreement or understanding between Caymus and any other entity, other than an employee of Caymus, for the sharing of compensation received or to be received for services rendered in connection with these cases.

**(C)    Caymus' Disinterestedness**

29. To the best of the Debtors' knowledge, information, and belief, Caymus is not related to or connected with and neither holds nor represents any interest adverse to the Debtors, their respective estates, their creditors or any other party in interest herein or their respective attorneys or the United States Trustee or anyone employed in the Office of the United States Trustee in the matters for which Caymus is proposed to be retained, except that Caymus is connected with the Debtors by virtue of this engagement, as detailed above, and Caymus may represent or have represented certain of the Debtors' creditors or other parties in interest herein, or interests adverse to such creditors or other parties in interest herein, in matters unrelated to these chapter 11 cases. Consequently, Caymus is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code. The Affidavit, executed on behalf of Caymus in accordance with section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014, is appended hereto and incorporated herein by reference. The Debtors' knowledge, information and belief regarding the matters set forth in this paragraph are based, and made in reliance, upon said affidavit. Caymus informed the Debtors that it has undertaken a detailed search of available information as set forth below, to determine and to disclose, whether it is performing or has performed services for any significant creditors, equity security holders, or insiders of the Debtors in such unrelated matters.

30. It should be understood that Caymus' current or former clients and their affiliates, officers, directors, principal shareholders, and their respective affiliates may have had relationships with parties in interest in these bankruptcy cases of which Caymus was not informed or, subsequent to the performance of Caymus' services, may have developed relationships with such parties of which Caymus is unaware.

31. To the best of Caymus' knowledge and belief none of Caymus' current or former clients (including their affiliates, officers, directors, principal shareholders, and their respective affiliates) or the limited partners or investees (including their respective affiliates that are known to Caymus) of the Fund is connected to the entities listed in the parties-in-interest list provided to Caymus by the Debtors' counsel, other parties in interest herein or interests adverse to such parties.

32. Caymus has indicated that it will promptly update its Affidavit, disclosing any material developments regarding the Debtors or any other pertinent relationships that require disclosure in the above-referenced case, if and when any such developments or relationships come to Caymus' attention.

**(D)** **Modification of Local Rule 2016-2(d) for Recordkeeping and Fee Applications**

33. Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Furthermore, Local Rule 2016-2(d) requires retained professionals to submit detailed time entries which set forth, among other things: a detailed description of each activity performed; the amount of time spent on the activity (in tenth of an hour increments); the subject matter of the activity; and the parties involved with the activity at issue. However, Local Rule 2016-2(g) allows a retained professional to request a waiver of the requirements of Local Rule 2016-2, for cause.

34. The Debtors respectfully submit that the requirements of Local Rule 2016-2(d) should be modified for Caymus due to the nature of Caymus' engagement and the Fee Structure. Caymus has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees, including the Monthly Advisory Fee and the Completion Fee, on a fixed-rate basis which, is customary in the financial advisory services industry. As such, the Debtors believe that the

submission of detailed time entries, pursuant to Local Rule 2016-2(d), is unnecessary, and the Debtors therefore request a modification of such reporting requirements.

35. Notwithstanding any terms of the Engagement Letter to the contrary, Caymus shall receive its fees and reimbursement of expenses solely in accordance with any Court-approved procedures for professionals in these chapter 11 cases. The Debtors propose that Caymus will provide monthly statements and file interim and final fee applications, as required by the Local Rules and any orders of this Court, for its fees and reasonable out-of-pocket expenses incurred under its engagement with the Debtors, including detailed descriptions of the expenses for which it has requested reimbursement.

36. Subject to the Court's approval, Caymus shall not be required to submit detailed time records, but in support of interim and final fee applications, Caymus shall provide reasonable descriptions of the work it has performed and provide a list of professionals (and their qualifications) who provided services to the Debtors during the applicable period.

37. Based on the foregoing, the Debtors request a modification of the informational requirements of Local Rule 2016-2(d).

**(E)** **Indemnification Provisions**

38. If the Application is granted, the Debtors will indemnify and hold Caymus harmless against liabilities arising out of or in connection with its retention by the Debtors, except to the extent any such liability for losses, claims, damages, or liabilities incurred by the Debtors that are finally judicially determined by a court of competent jurisdiction (not subject to further appeal) on the merits to have resulted from bad faith, gross negligence, or willful misconduct of the indemnified party.

39. The Debtors submit that such indemnification provisions are standard in the specialized financial advisory industry and that the provision of such indemnification by the Debtors is fair and reasonable considering Caymus' qualifications and the expectations of other financial advisors in connection with engagements of this scope and size. Such indemnification provisions are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in other chapter 11 cases. See e.g., In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. January 17, 2006) (order authorizing retention of Miller Buckfire on substantially the same terms); In re Foamex International, Inc., No. 05-12685 (PJW) (Bankr. D. Del. October 17, 2005) (same); In re Oakwood Homes Corporation, No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (same); In re United Artists Theatre Company, No. 00-3514-SLR (Bankr. D. Del. Dec. 1, 200) (order authorizing indemnification of Houlihan, Lodey by debtors); The Indemnification Provisions are similar to other indemnification provisions that have been approved by bankruptcy courts elsewhere. See, e.g., In re Comdisco, Inc., No. 02-C1174 (Bankr. N.D. Ill. 2002) (affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors;) In re Joan & David Halper, Inc., 248 B. R. 43 (Bankr. S.D.N.Y. 2000) affd., 2000 WL 1800690 (S.D. N.Y Dec. 6, 2000).

40. The terms and conditions of the Engagement Letter, including the indemnification provisions contained therein, were negotiated by the Debtors and Caymus at arm's length and in good faith. The Debtors respectfully submit that the indemnification provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Caymus' proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors. Accordingly,

as part of the Application, the Debtors request that the Court approve the indemnification provisions.

## NOTICE

41. No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. A copy of the Application was served upon the following parties: (i) Counsel to the Debtors; (ii) Counsel to the First Lien Administrative Agent; (iii) Counsel to the Second Lien Administrative Agent; (iv) the U.S. Trustee for the District of Delaware; (v) the debtors consolidated list of top 30 unsecured creditors; and (vi) all other parties that have requested service in these cases pursuant to Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

42. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, Debtors respectfully request that the Court enter an order in the form attached hereto, permitting the Debtors to retain Caymus in these chapter 11 cases as of the Commencement Date, approving the above-referenced billing practices and other terms and conditions of employment and granting such other and further relief as the Court deems just and proper.

Dated: September 14, 2009          Respectfully submitted,

Triple Crown Media LLC

By:   /s/ Mark G. Meikle
      Mark G. Meikle
      Chief Financial Officer