# **EXHIBIT C**

# CAYMUS PARTNERS
## INVESTMENT BANKERS

**PERSONAL & CONFIDENTIAL**

June 9, 2009

Triple Crown Media, Inc.
4370 Peachtree Road, NE
Atlanta, GA 30319

Attention: Mr. Mark Meikle
Chief Financial Officer

Dear Mark:

Reference is made to the letter agreement, dated April 6, 2009, between Caymus Partners LLC ("Caymus Partners") and Triple Crown Media, Inc. (the "Company") (the "Original Agreement").

In connection with, and as a part of, the consideration and evaluation of the Transaction (as defined in the Original Agreement) by the Company's Board of Directors (the "Board") and in furtherance of fulfilling its fiduciary duties, the Board has requested that Caymus Partners, in connection with rendering its services as financial advisor pursuant to the Original Agreement, provide certain additional related advice to the Company and the Board with respect to alternative transactions that might be available to the Company.

1. Scope of Engagement

   This letter agreement (this "Agreement") confirms the understanding, effective as of the date hereof (the "Effective Date"), between Caymus Partners and the Company that, if appropriate and to the extent requested by the Company, in accordance with the terms of this Agreement, Caymus Partners will:

   (a) advise the Company with respect to potential alternative recapitalization or restructuring transactions, which could include, without limitation, a Restructuring Transaction (as defined below), including the timing, structure and pricing of any such transactions, and assistance with analyzing, negotiating and effecting (i) an out-of-court restructuring of the Company's debt, (ii) a plan of reorganization or recapitalization for the Company, and/or (iii) to the extent necessary, performing valuation analyses on the Company and its assets;

(b) with the prior approval of the Company, assist the Company to solicit, coordinate and evaluate proposals regarding a Restructuring Transaction;

(c) assist with the formulation, evaluation, and implementation of various options for an amendment to the terms of the Company's debt obligations or a restructuring or reorganization of the Company, or its assets of businesses;

(d) provide financial advisory services to the Company in connection with developing, and seeking approval for, a restructuring plan (a "Plan"), which may be a plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et.seq. (the "Bankruptcy Code");

(e) provide financial advisory services to Company in connection with the structuring of any new securities to be issued under the Plan;

(f) assist the Company in negotiations with creditors, shareholders and other appropriate parties-in-interest;

(g) provide the Board and senior management with an evaluation with regard to the comparative implications of different strategic alternatives available to the Company, including without limitation, valuation metrics related to any alternative transactions (if any) and for comparable public companies and comparable publicly reported transactions;

(h) if necessary, participate in hearings before the bankruptcy court with respect to matters upon which Caymus Partners has provided advice, including coordinating with the Company's counsel with respect to testimony in connection therewith; and

(i) any other tasks as mutually agreed upon by Caymus Partners and the Company.

For the purposes of this Agreement, a "Restructuring Transaction" shall be defined as collectively, any material restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of all or a significant portion of the Company's obligations and/or indebtedness for borrowed money, including accrued and/or accreted interest thereon, which are outstanding as of the Effective Date ("Indebtedness"), including, without limitation, interest bearing trade debt, senior bank debt and subordinated debt, that is approved by the Board, and is achieved without limitation, through a solicitation of waivers and consents from the holders of Indebtedness: a material change in interest rates, settlement or forgiveness of Indebtedness; conversion of Indebtedness; the issuance of new securities, sale of disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions. Such material restructuring, reorganization and/or recapitalization shall include, without limitation, any transaction(s) which provide for: any material modification. amendment or change of, or in, principal balance, accrued or accreted interest, payment term. other debt service requirement, and/or financial or operating covenant: any forbearance for at least twelve (12) months with respect to any

payment obligation; conversion to equity, or some other security instrument, of any, or all, of such obligations or indebtedness; any compromise of the existing terms of such obligations and/or indebtedness; the issuance of new securities; sale or disposition of assets; sale of debt or equity securities or other interests or other similar transaction; any combination of the foregoing transactions. Each of the foregoing shall include, without limitation, any transaction in which requisite consents to a reorganization or restructuring are obtained pursuant to a tender offer, exchange offer, consent solicitation or other process, or a plan of reorganization under the United States Bankruptcy Code. Notwithstanding any of the foregoing, for greater clarity, any amendment to a covenant, payment of a consent fee, granting of a waiver of forbearance or increase in interest rate that leaves the principal balance or accrued interest unchanged, shall not alone be deemed a Restructuring Transaction for the purposes of this definition.

The Company agrees that neither it, its management, controlling shareholders, nor its subsidiaries will initiate any discussions regarding a Restructuring Transaction during the term of this Agreement, except through Caymus Partners or by promptly advising Caymus Partners of such discussions. Furthermore, the Company agrees to promptly inform Caymus Partners of any inquiry it receives regarding a Restructuring Transaction.

Caymus Partners agrees that it shall not initiate any discussions with or otherwise contact any party regarding a Restructuring Transaction, or solicit any proposals or indications of interest with respect to a Restructuring Transaction, without the prior approval of the Company.

The Company acknowledges that Caymus Partners' engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, PCAOB, SEC or other state or national professional or regulatory body.

Caymus Partners makes no representation or guarantee that an appropriate Restructuring Transaction can be formulated, that any Restructuring Transaction in general or any transaction in particular is the best course of action for the Company or, if formulated, that the execution of any proposed Restructuring Transaction will, if required, be accepted or approved by the Board (including any special committee of the Board) or the Company's stockholders and other constituents. Further Caymus Partners assumes no responsibility for the selection and approval of any strategic alternative presented to the Company or the Company's Board (including any special committee of the Board), which determination shall rest with the Company and the Board.

It is understood and agreed that Caymus Partners' services hereunder will not include providing any tax advice or developing any tax strategies for the Company. It is further understood and agreed that Caymus Partners' services hereunder will not include the preparation of a due diligence report, presentation or otherwise for the Company. If you should request additional services from Caymus Partners or its affiliates, not otherwise contemplated by this letter agreement, the Company and Caymus Partners will enter into an additional letter agreement which will set forth the nature and scope of the services,

appropriate compensation and other customary matters, as mutually agreed upon by the Company.

2. Compensation

As compensation for the services to be rendered by Caymus Partners hereunder, the Company shall pay Caymus Partners as follows:

(a) Monthly Fees. In addition to the other fees provided for herein, upon the execution of this Agreement, and on every monthly anniversary of the Effective Date during the term of this Agreement, the Company shall pay Caymus Partners, without notice or invoice, a non-refundable cash fee per month (the "Monthly Fee") of $50,000 for each of the first three months and $25,000 per month, thereafter. Caymus Partners hereby agrees that the payment made by the Company on June 1, 2009 pursuant to Paragraph 2 (b) of the Original Agreement shall be credited against the initial payment due on the Effective Date. Each Monthly Fee shall be earned upon Caymus Partners' receipt thereof. One-hundred percent (100%) of any Monthly Fees paid to Caymus Partners beginning with the third Monthly Fee will be credited, without duplication, against any Restructuring Transaction Success Fee (as defined below). Should the Company elect to terminate the engagement within 60 days from the Effective Date, Caymus Partners shall be entitled to receive $100,000 less any Monthly Fees paid prior to the date of termination.

(b) Restructuring Transaction Success Fee. In addition to the other fees provided for herein, upon the earlier to occur of: (i) the closing of any out-of-court Restructuring Transaction(s); or (ii) the effective date of a confirmed plan of reorganization under Chapter 11 of the Bankruptcy Code, which constitutes a Restructuring Transaction, Caymus Partners shall earn, and the Company shall promptly pay to Caymus Partners, a transaction success fee of $400,000 (a "Restructuring Transaction Success Fee").

(c) Compensation which is payable to Caymus Partners pursuant to subparagraph 2(a), or (b) shall be paid by the Company (or its successor, as the case may be) to Caymus Partners in immediately available funds.

(d) Caymus Partners hereby agrees that no additional compensation is due to Caymus Partners pursuant to Paragraph 2 of the Original Agreement and that all of the Company's obligations to Caymus Partners under such Paragraph 2 have been satisfied in full.

3. Reimbursable Expenses

The Company shall reimburse Caymus Partners for its out-of-pocket and incidental expenses reasonably incurred in connection with the Restructuring Transaction (whether or not consummated), including:

- Travel expenses (e.g., transportation, meals, and lodging);
- Extraordinary, transaction-specific office expenses (e.g., conference calls, mail, couriers, and printing);
- Reasonable fees and disbursements of counsel in connection with the negotiation, implementation and enforcement of this Agreement; and
- Other customary expenditures.

Caymus Partners shall bill the Company monthly for expenses, and the Company shall reimburse Caymus Partners for such expenses within 10 days of receiving a bill. The Company will pay 1% per month on all reimbursement payments 30 days past due.

4. Indemnification

Because Caymus Partners will be acting for the benefit of the Company in connection with this engagement, the Company agrees to indemnify Caymus Partners and certain other persons as set forth in the indemnification provisions attached hereto as Exhibit A, the provisions of which are incorporated herein in its entirety.

5. Advertisements

The Company acknowledges Caymus Partners may, at Caymus Partners' expense, publicize the consummation of the Restructuring Transaction and Caymus Partners' role in it (which, subject to the approval of the Company, may include the reproduction of the Company's logo and a hyperlink to the Company's Web site) on Caymus Partners' Internet Web site and such financial and other newspapers and journals as Caymus Partners may choose, stating that Caymus Partners has acted as financial advisor to the Company in connection with the Restructuring Transaction. Furthermore, if requested by Caymus Partners, the Company will include a mutually acceptable reference to Caymus Partners in any press release or other public announcement made by the Company concerning the Restructuring Transaction.

6. Company's Responsibilities, Representations and Warranties

In connection with Caymus Partners' engagement, the Company will furnish Caymus Partners with all information which Caymus Partners reasonably requests and will provide Caymus Partners with reasonable access to the Company's officers, directors, accountants, counsel and other advisors and representatives (collectively, "Representatives"). The Company represents and warrants to Caymus Partners that: (a) all such information supplied by the Company to Caymus Partners is and will be true and accurate in all material respects and does not and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (b) any projected financial information or other forward looking information which the Company provides to Caymus Partners will be made by the Company in good faith, based on management's best estimates then available and based on facts and assumptions which the Company believes to be reasonable. The Company acknowledges and agrees

that Caymus Partners will be using and relying upon such information supplied by the Company and its Representatives and any other publicly available information concerning the Company without any independent investigation or verification thereof or independent appraisal by Caymus Partners of the Company, nor will Caymus Partners be providing a solvency opinion with respect to the Company.

The Company will promptly notify Caymus Partners if the Company becomes aware of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to Caymus Partners or, to the Company's knowledge, any interested party.

7. Board Minutes

Upon Caymus Partners' reasonable request, the Company will provide Caymus Partners with drafts of the minutes of any meetings of the Company's Board of Directors (or committees thereof) at which representatives of Caymus Partners made a presentation in order to permit Caymus Partners to insure that any description of such presentation is correctly set forth therein.

8. Confidentiality

Except as contemplated by the terms hereof or as required by applicable law or legal process (a "Demand"), Caymus Partners shall keep confidential all material non-public information provided to it by or at the request of the Company, and shall not disclose such information, including the fact of this engagement by the Company, to any third party or to any of its employees or advisors except to those persons who have a need to know such information in connection with Caymus Partners' performance of its responsibilities hereunder and who are advised of the confidential nature of the information and who agree to keep such information confidential. In the event that Caymus Partners is served with a Demand, Caymus Partners will promptly advise the Company thereof and will cooperate with all reasonable and lawful requests by the Company to prevent the disclosure of confidential and/or proprietary information pursuant to the Demand.

Notwithstanding any of the foregoing, the following will not constitute confidential information for purposes of this Agreement:

(a) information which was already in the possession of Caymus Partners prior to its receipt from the Company;

(b) information which is obtained by Caymus Partners from a third person who, insofar as is known to Caymus Partners, is not prohibited from transmitting the information to Caymus Partners by a contractual, legal or fiduciary obligation to the Company; and

(c) information which is or becomes publicly available through no fault of Caymus Partners or any of its professionals.

9. Other Terms and Conditions

The Company further represents and warrants to Caymus Partners that:

(a) The Company has taken no action that would give any brokers, representatives, finders or other persons an interest in the compensation due to Caymus Partners in connection with the Restructuring Transaction contemplated herein; and

(b) This Agreement does not violate or constitute a breach or default under any contract, agreement, arrangement or understanding, whether written or oral, to which the Company or any of its subsidiaries is a party or by which its or their assets are bound, except as disclosed to Caymus Partners.

10. Disclosure to Third Parties

Except as set forth in paragraph 1(a) of this Agreement with respect to the Restructuring Transaction or otherwise required by any law, rule, regulation, or the NASD, without the prior consent of Caymus Partners, the Company will not publicly refer to Caymus Partners or publicly disclose or otherwise make available to third parties (except the Company's counsel or other advisers, provided the Company informs them of this provision) any advice, either oral or written, which Caymus Partners provides to the Company in connection with this engagement.

11. Successors and Assigns

The benefits of this Agreement, together with the separate indemnification agreement, shall inure to the respective successors and permitted assigns of the parties hereto and of the indemnified parties under such indemnification agreement and their respective successors, permitted assigns and representatives, and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns. This Agreement and the related indemnification agreement may not be assigned without the prior written consent of the non-assigning party.

12. Amendment or Modification

This Agreement may not be amended or modified except in writing signed by the party against whom enforcement is sought and shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to its principles of conflicts of laws.

13. WAIVER OF JURY TRIAL

EACH OF CAYMUS PARTNERS AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW. ON BEHALF OF ITS

AFFILIATES AND STOCKHOLDERS) WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, SUIT, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATING TO OR ARISING OUT OF THE ENGAGEMENT OF CAYMUS PARTNERS PURSUANT TO, OR THE PERFORMANCE BY CAYMUS PARTNERS OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. CAYMUS PARTNERS AND THE COMPANY EACH AGREE THAT SHOULD A DISPUTE ARISE IN THIS AGREEMENT THAT CAN NOT BE RESOLVED BY NEGOTIATIONS BETWEEN CAYMUS PARTNERS AND THE COMPANY, THAT THE PARTIES ARE REQUIRED TO SUBMIT THEIR DISPUTE TO BINDING ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION OR SOME SIMILAR MUTUALLY AGREED UPON ORGANIZATION. BOTH CAYMUS PARTNERS AND THE COMPANY AGREE THAT THE VERDICT OF SUCH BINDING ARBITRATION SHALL BE FINAL.

14. Purpose of Agreement

The purpose of this Agreement is to set forth the services that Caymus Partners will provide to the Company, as an independent contractor, either as specifically provided herein or as subsequently requested in writing by the Company and agreed to by Caymus Partners. The parties hereto do not intend to create any special or fiduciary relationship between them. In addition, the advisory relationship between Caymus Partners and the Company refers to the fact that the services to be provided by Caymus Partners hereunder are to be provided solely by Caymus Partners and that the fees to be paid by the Company hereunder are solely for the benefit of Caymus Partners. There may be other services which are required to be provided to the Company in connection with any Restructuring Transaction contemplated by this Agreement and which will be provided by others (*e.g.*, independent auditors or appraisers). This Agreement is solely for the benefit of Caymus Partners and the Company and is not intended to create rights or obligations of either party for the benefit of third parties, including, without limitation, the creditors of the Company.

15. Termination

Caymus Partners' engagement hereunder shall terminate twelve months from the date hereof unless terminated earlier by either party at any time, with or without cause, by giving at least 10 days prior written notice to the other party.

16. Survival of Terms of Agreement

The provisions of this Agreement, other than paragraph 1 and the first sentence of paragraph 6, shall survive and remain in full force and effect notwithstanding any termination of Caymus Partners' engagement under paragraph 15 of this Agreement or otherwise.

16. Bankruptcy Court Approval

In the event that the Company is, or becomes, a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case (the "Bankruptcy Court") for the approval pursuant to Sections 327 and 328 of the Bankruptcy Code of (i) this Agreement, including the attached indemnification, and (ii) Caymus Partners' retention by the Company under the terms of this Agreement and subject to the standard of review of Section 328(a) of the Bankruptcy Code and not subject to any other standard of review under Section 330 of the Bankruptcy Code. The Company shall supply Caymus Partners with a draft of such application and any proposed order authorizing Caymus Partners' retention sufficiently in advance of the filing of such application and proposed order to enable Caymus Partners and its counsel to review and comment thereon. Caymus Partners shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Caymus Partners' retention under the terms of this Agreement is approved under Section 326(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Caymus Partners in all respects. Caymus Partners acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Caymus Partners' fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders provide however, that Caymus Partners shall not be required to maintain time records and, provided further, that Caymus Partners shall not be required to maintain receipts for expenses in amounts less than $75. In the event that the Company becomes a debtor under the Bankruptcy Code and Caymus Partners' engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Caymus Partners hereunder as promptly as possible in accordance with the terms of this Agreement, the order of the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Caymus Partners to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. If the order authorizing the employment of Caymus Partners is not obtained, or is later reversed or set aside for any reason, Caymus Partners may terminate this Agreement, and the Company shall reimburse Caymus Partners for all fees and expenses reasonably incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders.

With respect to Caymus Partners' retention under Sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that Caymus Partners' restructuring expertise, as well as its capital markets knowledge, financial skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Caymus Partners' engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Caymus Partners' services hereunder could not be measured merely by reference to the number of hours expended by Caymus Partners professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in

anticipation that a substantial commitment of professional time and effort will be required of Caymus Partners and its professionals hereunder over the term of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Caymus Partners and that actual time and commitment required of Caymus Partners and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for Caymus Partners. In addition, given the numerous issues which Caymus Partners may required to address in the performances of its services hereunder, Caymus Partners' commitment to the variable level of time necessary to address all such issues as they arise, and the market prices for Caymus Partners' services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including Monthly Fees and the Restructuring Transaction Success Fees) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

17. Notice Provision

Any notice that either party may be required to give, or may wish to give, to the other party under this Agreement shall be given in writing, by certified mail or registered mail, return receipt requested, or by hand delivery against receipt, or by U.S. Government or private overnight carrier against a signed and dated receipt, and addressed as follows:

| **Triple Crown Media, Inc.:** | **Caymus Partners:** |
|---|---|
| Triple Crown Media, Inc. | Caymus Partners LLC |
| 4370 Peachtree Road, NE | One Live Oak Center |
| Atlanta, GA 30319 | 3475 Lenox Road, NE, Suite 650 |
| | Atlanta, GA 30326 |
| Attn: Robert S. Prather | Attn: Geoffrey L. Faux, |
| Chief Executive Officer | Managing Partner |

With a copy to the
Chairman of the Board

Caymus Partners is delighted to accept this engagement and looks forward to working with the Company on this assignment. Please confirm Caymus Partners' engagement as set forth herein by signing the enclosed duplicate of this letter and returning it, whereupon this letter agreement shall constitute a binding agreement as of the date first above written.

Very truly yours,

CAYMUS PARTNERS LLC

By: _____
J. Oliver Maggard
Managing Partner

Accepted and agreed as of the
date first above written:

Triple Crown Media, Inc.

By: _____
Mark Meikle
Chief Financial Officer

EXHIBIT A

In connection with the engagement of Caymus Partners to assist the Company as set forth in this Agreement, including modifications or future additions to such engagement and related activities prior to the date of the Agreement (the "Engagement"), the Company agrees that it will indemnify and hold harmless Caymus Partners and its affiliates and their respective directors, officers, partners, members, agents and employees and each other person controlling Caymus Partners or any of its affiliates (collectively, the "Indemnified Parties"), to the full extent lawful, from and against any losses, damages, claims or liabilities (collectively, "Losses") related to or arising out of the Engagement or any transaction or conduct in connection therewith, except that this right to indemnification shall not apply with respect to any Losses that are judicially determined to have resulted from the gross negligence, willful misconduct, bad faith or fraud of such Indemnified Party.

In the event that the foregoing indemnity is invalid or legally unenforceable by any Indemnified Party for any reason, the Company agrees to contribute to any Losses related to or arising out of the Engagement or any transaction or conduct in connection therewith as follows. Each of Caymus Partners and the Company shall contribute in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by Caymus Partners, on the one hand, and by the Company and its security holders, on the other hand, from the actual or proposed transaction arising in connection with the Engagement, and if such allocation is judicially unavailable or insufficient to hold such Indemnified Party harmless, each of Caymus Partners and the Company shall contribute in such proportion as is appropriate to reflect not only the relative benefits as set forth above, but also the relative fault of each of us in connection with the statements, omissions or other conduct that resulted in such Losses, as well as any other relevant equitable considerations. Benefits received (or anticipated to be received) by the Company and its security holders shall be deemed to be equal to the aggregate cash consideration and value of securities or any other property payable, issuable, exchangeable or transferable in such transaction, or proposed transaction, and benefits received by Caymus Partners shall be deemed to be equal to the compensation paid or payable by the Company to Caymus Partners in connection with the Engagement (exclusive of amounts paid for reimbursement of expenses or paid under this Exhibit A). Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or the conduct by the Company (or its employees or other agents), on the one hand, or by Caymus Partners, on the other hand. Caymus Partners and the Company agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation that does not take account of the equitable considerations referred to above. Notwithstanding anything to the contrary above, in no event shall Caymus Partners be responsible for any amounts in excess of the amount of the compensation actually paid by the Company to Caymus Partners in connection with the Engagement (exclusive of amounts paid for reimbursement of expenses or paid under this Exhibit A).

The Company agrees that it will not, without the prior written consent of Caymus Partners, settle, compromise, consent to the entry of any judgment in or otherwise seek to

terminate any pending or threatened claim or proceeding related to or arising out of the Engagement or any actual or proposed transactions or other conduct in connection therewith (whether or not Caymus Partners or any Indemnified Party is a party to such claim or proceeding) unless such settlement, compromise, consent or termination (i) includes a provision unconditionally releasing Caymus Partners and each other Indemnified Party from, and holding all such persons harmless against, all liabilities arising out of the Engagement or any transactions or conduct in connection therewith (ii) is not pursuant to any document which refers to Caymus Partners and is publicly disclosed or publicly available. The Company also agrees to promptly reimburse each Indemnified Party for all reasonable expenses (including the reasonable fees and expenses of counsel) within a reasonable time after they are incurred by such Indemnified Party in connection with investigating, preparing for, defending, or providing evidence in, any pending or threatened claim or proceeding related to or arising out of the Engagement or any actual or proposed transaction or other conduct in connection therewith or otherwise in respect of which indemnification or contribution may be sought hereunder (whether or not Caymus Partners or any Indemnified Party is a party to such claim or proceeding) or in enforcing the Agreement (including this Exhibit A).

If indemnification is to be sought hereunder by an Indemnified Party, then such Indemnified Party will notify the Company of the commencement of any action or proceeding in respect thereof; provided, however, that the failure so to notify the Company will not relieve the Company from any liability hereunder, except to the extent that it is materially prejudiced by such failure, and will not relieve the Company from any other liability that it may otherwise have to such Indemnified Party. Following such notification, the Company may elect in writing to assume the defense of such action or proceeding, with counsel reasonably satisfactory to the Indemnified Party, and upon such election, the Company will not be liable for any legal costs subsequently incurred by such Indemnified Party (other than reasonable costs of investigation) in connection therewith, unless (i) the Company has failed to provide counsel reasonably satisfactory to such Indemnified Party in a timely manner, (ii) counsel which has been provided by the Company reasonably determines that its representation of such Indemnified Party would present it with a conflict of interest, or (iii) such Indemnified Party reasonably concludes that there may be legal defenses available to it or other Indemnified Party that are different from or in addition to those available to the Company. In any action or proceeding the defense of which the Company assumes the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The Company further agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or any of its affiliates, creditors or security holders for or in connection with the Engagement or any actual or proposed transaction or other conduct in connection therewith except for Losses incurred by the Company that are finally judicially determined to have resulted primarily from the gross negligence, willful misconduct, bad faith or fraud of such Indemnified Party.

In the event that the Company is considering entering into one or a series of transactions involving a merger or other business combination or a dissolution or liquidation of all or a significant portion of its assets, the Company agrees to promptly notify Caymus Partners in writing. If requested by Caymus Partners, the Company shall establish alternative means of

providing for its obligations set forth in this Exhibit A on terms and conditions reasonably satisfactory to Caymus Partners.

The agreement of the Company in this Exhibit A shall apply whether or not any Indemnified Party is a formal party to any lawsuit, claim or other proceeding and is in lieu of any rights Caymus Partners or any other Indemnified Party may have at common law or otherwise against the Company or its affiliates and shall be binding on and inure to the benefit of any successors, assigns and personal representatives of the Company and each Indemnified Party. This Exhibit A is governed by the laws of the State of Georgia, without regard to such conflicts of law rules thereof. Solely for purposes of enforcing this Exhibit A, the Company hereby consents to personal jurisdiction, service of process and venue in any court in which any claim or proceeding that is subject to this Exhibit A is brought against Caymus Partners. Any right to trial by jury with respect to any claim or proceeding related to or arising out of the Engagement, or any transaction in connection therewith or this Exhibit A is waived. This Exhibit A shall remain in full force and effect notwithstanding the completion or termination of the engagement.

-END-